[Cite as *State v. Osman*, 2014-Ohio-294.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                          :

     Plaintiff-Appellee,              :          Case No.  13CA22

     vs.                              :

MAHAT OSMAN, AKA MAHAD          :          DECISION AND JUDGMENT
OSMAN, AKA MOHAMUD             :          ENTRY
JAMA, AKA TAZ,                          :

     Defendant-Appellant.             :          **Released: 01/22/14**
_____

APPEARANCES:

Sam B. Weiner, Samuel B. Weiner Co., L.P.A., Columbus, Ohio, and David
J. Graeff, Westerville, Ohio, for Appellant.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry M.
Saunders, Assistant Prosecuting Attorney, Athens, Ohio, for Appellee.
_____

McFarland, J.

    **{¶1}** Mahat Osman appeals the convictions and sentences imposed,

post remand, by the Athens County Court of Common Pleas after a jury

found him guilty of six felony offenses.  On appeal, Appellant raises only

one assignment of error, contending that the trial court erred at the re-

sentencing hearing when it convicted and sentenced him again on both the

charge of felony murder, in violation of R.C. 2903.02(B), and aggravated

robbery, in violation of R.C. 2911.01, claiming that the offenses are allied

offenses of similar import under R.C. 2941.25. However, because we conclude that these two crimes had separate victims, we find they were committed separately and thus are of dissimilar import. As such, Appellant's sole assignment of error is overruled. Accordingly, the decision of the trial court is affirmed.

FACTS

{¶2} This case is before us for a second time on appeal, following a prior remand to the trial court for the purposes of re-sentencing. The facts are as follows, primarily set forth in our prior decision related to this matter. The exchange of gunfire during an aggravated robbery between three men outside a trailer and three other men inside a trailer resulted in the death of bystander Donnie Putnam (hereinafter "victim") on February 14, 2009. The victim's death occurred outside Billie Osbourne, Jr.'s trailer.

{¶3} Three men, Osman, Philip Boler, and Abdifatah Abdi, and one woman, Hamda Jama went in two cars to Osbourne's trailer intent on committing a robbery. A fifth individual, Eric Fussner, went with them because someone ordered him at gunpoint to drive his car. Fussner drove Osman and Abdi while Boler drove Jama to the trailer. When the group arrived at the trailer, Osman and Abdi ordered Fussner to back out of the driveway so that they could confer with Boler and establish a plan of action.

Before Fussner pulled into the driveway a second time, Osman and Abdi had him turn off his lights.

{¶4} Osman, Abdi, and Boler exited the vehicles. Boler carried a .22 Marlin, and Fussner overheard Boler say to Osman that he (i.e., Boler) would have "his" head in his sights the whole time. (The record is not clear whose head Boler was referring to.) Osman and Abdi then walked up to Osbourne's trailer. Inside Osbourne's trailer that evening, Shane Benson and his friend John Perry Jr. were in the dining room smoking crack cocaine. Someone (the record is not precisely clear on who) had noticed the two cars approaching the trailer.

{¶5} Because of information he had received previously, Osbourne was concerned that the individuals in the cars wanted to rob him. Earlier that day, Osbourne had retrieved several guns and had placed them in readily accessible locations in the trailer. He placed a 9mm semi-automatic pistol on top of the television. He placed an SKS semi-automatic rifle next to the front door. And finally, he leaned a shotgun up against a countertop.

{¶6} Osman and Abdi knocked on the front door. Osbourne partially opened it and asked what they wanted. Osman and Abdi demanded to speak with "Johnny." Osbourne said that Johnny was not there and that there were children in the trailer. Osbourne testified that Abdi then drew a .40 caliber

semi-automatic Smith and Wesson pistol and pressed it against Osbourne's gut. Osbourne grabbed the pistol and pushed it aside. As the two men struggled over the pistol, Abdi fired the gun twice. Eventually, Osbourne manipulated the pistol so that it pointed towards Abdi's head. At this point, Abdi turned and ran letting go of the pistol.

{¶7} The front door of Osbourne's trailer opened to the outside. After Osbourne wrested the pistol away from Abdi, Osbourne stood slightly outside his trailer. Osman then slammed against the front door knocking Osbourne against the wall. Osbourne shoved the door back open and knocked Osman backwards. Osman then ran from the porch. At this point, a gunfight ensued. Inside or near the trailer, Osbourne fired the gun he wrested from Abdi until it ran out of bullets. Osbourne then retrieved his SKS semiautomatic rifle and fired several rounds until it jammed. Osbourne's two visitors inside the trailer joined the gunfight. That is, Perry fired four rounds from a 9mm pistol, and Benson fired at least one shell from a shotgun.

{¶8} Outside the trailer, Boler fired at least three rounds from the .22 Marlin rifle. And Fussner testified that both Osman and Abdi fired at the trailer as they retreated from the porch. During the struggle on the porch, the victim arrived on the scene with his girlfriend Misty Swartz. The victim and Osbourne were friends. The victim got out of his car and started to move

towards the porch. A 9mm round struck the victim during the exchange of gunfire. The bullet punctured the middle and lower lobes of the victim's right lung. Mortally wounded, the victim fell to the ground and died shortly thereafter.

{¶9} During the gunfight, Fussner backed his car out of the driveway and drove off. As a result, Osman, Boler, Abdi, and Jama all piled into the remaining car. Due to the speed of the escape, however, the car crashed and overturned shortly after leaving Osbourne's trailer. Boler remained in the area of the wreck, but his co-conspirators fled on foot. Paramedics were called to the scene of the shooting. One of the dispatched squads instead encountered the overturned car. The paramedics found Boler who appeared dazed and confused after the accident. While one of the paramedics was treating Boler, officers from the Athens County Sheriff's Office arrived and arrested Boler. Officers of the Ohio State Highway Patrol eventually apprehended Boler's coconspirators, including Osman.

{¶10} As we noted in our prior opinion, Osman had a different version of the events. Following his arrest, Osman made several statements to police. Initially, Osman gave a statement to Trooper Glendon Ward when Trooper Ward was transporting Osman from the scene of Osman's arrest to the Athens County Sherriff's Department. In this statement, Osman informed

Trooper Ward that he and his coconspirators were the victims of a car accident. Osman stated that another vehicle hit their car from behind. At that time, however, the police had not advised Osman of his Miranda rights. Shortly after Trooper Ward brought Osman to the Sherriff's Department, Trooper Ward advised Osman of his Miranda rights. Osman again claimed that he and his co-conspirators were the victims of a hit-and-run accident. Osman claimed that he was travelling to a friend's house when another vehicle caused the car to crash.

{¶11} Lt. Bryan Cooper of the Athens County Sherriff's Department interviewed Osman several hours later. Lt. Cooper re-advised Osman of his Miranda rights. During the interview, Osman admitted that he and his co-conspirators took weapons to Osbourne's trailer to commit a robbery. Osman also admitted that he drew his firearm during the struggle with Osbourne on the porch. (Osman initially stated to Lt. Cooper that Abdi first pulled the gun on Osbourne. Osman, however, changed his story during the interview and stated that he, and not Abdi, first pulled the gun on Osbourne).

{¶12} Ultimately, the jury returned a verdict finding Osman (1) guilty of aggravated robbery and complicity to aggravated robbery, both with a firearm specification, in violation of R.C. 2911.01(A)(1) & 2941.145; (2) aggravated robbery and complicity to aggravated robbery, both with a

firearm specification, in violation of R.C. 2911.01(A)(3) & 2941.145; and (3) murder and complicity to murder, both with a firearm specification, in violation of R.C. 2903.02(B) & 2941.145.

{¶13} The trial court merged the counts of aggravated robbery and complicity to aggravated robbery, and the court sentenced Osman to ten years incarceration for those counts. The trial court also merged the murder and complicity to murder convictions, and the court imposed a mandatory fifteen years to life incarceration for the murder conviction plus three years for the firearm specification. The trial court ordered all sentences to be served consecutively, imposing a total sentence of twenty-eight years to life.

{¶14} Osman filed a direct appeal of his convictions and sentences. This Court affirmed Appellant's convictions and sentences in part, reversed in part, and remanded the matter to the trial court. *State v. Osman*, 4th Dist. Athens No. 09CA36, 2011-Ohio-4626. With one exception, this Court upheld Osman's convictions and sentences. Of importance to the present appeal, we concluded that aggravated robbery and felony murder were allied offenses of similar import and remanded the matter to the trial court for further proceedings to determine if the two crimes were committed separately or with a separate animus. *Osman* at ¶ 1.

{¶15} As a result of this Court's remand order, the trial court held a re-sentencing hearing on April 9, 2013. The trial court determined that the two crimes at issue were committed separately as they had separate victims. In particular, the court noted that the victim of the aggravated robbery charges was Billy Jo Osbourne while the victim of the murder charge was Donnie Putnam. As a result, the trial court found the crimes were not allied offenses of similar import and thus refused to merge them for purposes of sentencing. As such, Appellant was once again sentenced for both of these crimes separately. It is from the trial court's April 24, 2013, judgment entry re-sentencing him that Osman now brings his current appeal, assigning a single error for our review.

ASSIGNMENT OF ERROR

"I.     THE TRIAL COURT ERRED, AT THE RE-SENTENCING HEARING, WHEN IT CONVICTED AND SENTENCED THE DEFENDANT AGAIN ON BOTH THE CHARGE OF MURDER, IN VIOLATION OF R.C. 2903.02(B) WHICH PROSCRIBED CAUSING THE DEATH OF ANOTHER AS A PROXIMATE RESULT OF AGGRAVATED ROBBERY, IN VIOLATION OF R.C. 2911.01, SINCE THE OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT UNDER R.C. 2941.25 WHICH PRECLUDES MULTIPLE CONVICTIONS IN SENTENCING FOR THE SAME CONDUCT AND BECAUSE THE CONSTITUTIONAL PROVISIONS OF THE DOUBLE JEOPARDY CLAUSE PROHIBIT THE INFLICTION OF CUMULATIVE PUNISHMENT FOR BOTH GREATER AND LESSER INCLUDED OFFENSES."

LEGAL ANALYSIS

**{¶16}** In his sole assignment of error, Appellant contends that the trial court erred in convicting him of both felony murder and aggravated robbery, crimes which he claims arose from the same conduct, were committed with a single animus and, as a result, should have merged for purposes of sentencing, as allied offenses of similar import. Appellate courts apply a de novo standard of review in reviewing a trial court's application of the merger statute, R.C. 2941.25. *State v. Williams*, 134 Ohio St.3d 482, 488, 2012-Ohio-5699, 983 N.E.2d 1245, ¶¶ 25-28 . "Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions." Id.

**{¶17}** R.C. 2941.25 "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibit[ ] multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. The statute states:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more

offenses of dissimilar import, or where his conduct results in

two or more offenses of the same or similar kind committed

separately or with a separate animus as to each, the indictment

or information may contain counts for all such offenses, and the

defendant may be convicted of all of them."

**{¶18}** *In State v. Nguyen*, 4th Dist. Athens No. 12CA14, 2013-Ohio-3170, ¶ 103, we set forth the analysis that applies when determining if offenses should merge under R.C. 2941.25:

" 'Through a series of opinions the Supreme Court of Ohio has

advised and re-advised lower courts on the difficult task of

applying Ohio's multiple-count statute to determine which

criminal convictions require merger.' [*State v. Delawder*, 4th

Dist. Scioto App. No. 10CA3344, 2012-Ohio-1923, ¶ 39]. In

the plurality decision of *State v. Johnson*, 128 Ohio St.3d 153,

2010-Ohio-6314, 942 N.E.2d 1061, the Court expressly

overruled its then current test for merger. Under the new test,

the trial court must first determine 'whether it is possible to

commit one offense and commit the other with the same

conduct, not whether it is possible to commit one without

committing the other.' (Emphasis sic). *Johnson* at ¶ 48. If the offenses are so alike that the same conduct can subject the accused to potential culpability for both, they are 'of similar import' and the court must proceed to the second step. The court must then determine whether the offenses in fact were committed by the same conduct, i.e., committed as a single act with a single animus. Id. at ¶ 49. If so, merger is necessary. However, if the offenses resulted from separate acts or were performed with a separate animus, or if the commission of one offense will never result in the commission of the other, the offenses will not merge. Id. at ¶ 51."

**{¶19}** This Court has already determined that, here, it was possible for Osman to commit felony murder and aggravated robbery with the same conduct. *State v. Osman*, supra, at ¶ 32. However, as the trial court had not considered whether Osman committed these crimes separately or with a separate animus prior to imposing sentence, we remanded the matter for further proceedings and re-sentencing. On remand, the trial court determined that "[i]n the instant case, Billy Jo Osbourne was the victim of the aggravated robbery charges. Donnie Putman was the murder victim although he was an innocent bystander." As such, the trial court further

determined that "each crime has a separate victim, and were thus of dissimilar import[,]" and that Osman's conduct "resulted in two or more offenses committed separately or with a separate animus to each." Based upon our review of the record as well as recent case law, we agree with the trial court's determination.

{¶20} This Court recently addressed and rejected a similar argument in *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649. In *Clay*, we reasoned as follows at ¶ 84:

"Ohio courts have routinely recognized that separate convictions and sentences are permitted when the same course of conduct affects multiple victims. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48 (finding the court could impose multiple punishments for aggravated arson as defendant 'caused six offenses of dissimilar import because six different people were placed at risk' when defendant set one structure on fire); *State v. Jones*, 18 Ohio St.3d 116, 480 N.E.2d 408 (1985) (determining that defendant could be sentenced for two convictions of aggravated vehicular homicide, even though the convictions arose out of the same conduct, when the conduct resulted in the death of two individuals); *State v. Crisp*,

4th Dist. Scioto No. 10CA3404, 2012-Ohio-1730, ¶ 36 (finding that '[i]n situations where a defendant has knowledge that more than one victim could be harmed, courts have concluded there is a separate animus for each victim at risk'). Thus, 'multiple sentences for a single act committed against multiple victims is permissible where the offense is defined in terms of conduct toward "another as such offenses are of dissimilar import; the import being each person affected." ' *State v. Tapscott*, 7th Dist. Mahoning No. 11 MA26, 2012-Ohio-4213, ¶ 41, quoting *Jones*, 18 Ohio St.3d at 118, 480 N.E.2d 408; accord *State v. Angus*, 10th Dist. No. 05AP-1054, 2006-Ohio-4455, 2006 WL 2474512, ¶ 34 ('Where a defendant's conduct injures multiple victims, the defendant may be convicted and sentenced for each offense involving a separate victim.')."

**{¶21}** Based upon the foregoing, we reject Osman's argument that the crimes of felony murder and aggravated robbery were committed with a single animus.  We further reject Osman's argument that because the felony murder statute fails to specify a mens rea element but instead relies upon the mens rea specified in the predicate offense, the he committed felony murder with the same animus as the predicate offense.  See *State v. Ragland*, 5th

Dist. Stark No. 2010CA00023, 2011-Ohio-2245, ¶ 71 (concluding that because the crimes of felony murder and aggravated robbery had two separate victims, the conduct constituted "two offenses of dissimilar import."). Likewise, we reject Appellant's further argument that the felony murder offense was committed with no animus whatsoever. For us to conclude that there was no animus in the commission of the felony murder offense would seem to invalidate Appellant's conviction for that offense. Rather, we affirmed Appellant's conviction for that offense and noted that "[u]nder Ohio law, 'it is irrelevant whether the killer is the defendant, an accomplice or a third party.' " *State v. Osman* at ¶ 47.

{¶22} In response to these arguments, we instead are persuaded by the reasoning set forth above with respect to crimes stated in terms of conduct towards "another" being of dissimilar import when multiple victims are involved. *State v. Clay* at ¶ 84; citing *State v. Tapscott* at ¶ 41. Here, the crimes of felony murder and aggravated robbery are both defined in terms of conduct towards another. Specifically, R.C. 2903.02(B) provides that "[n]o person shall cause the death *of another* * * *." (Emphasis added). Further, R.C. 2911.01(A)(1) and (3) provides that:

> "[n]o person, in attempting or committing a theft offense * * *
> or in fleeing immediately after the attempt or offense, shall do

any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * (3) Inflict, or attempt to inflict, serious physical harm *on another*."  (Emphasis added).

**{¶23}**  As recently noted by the First District Court of Appeals in a case involving multiple victims as a result of the commission of the offenses of aggravated vehicular homicide and aggravated vehicular assault:

"In 1985, the Ohio Supreme Court identified the General Assembly's intention to provide for multiple punishments in cases like this one where the offense is defined in terms of conduct towards 'another,' and the offender has committed a single act resulting in multiple victims. In *State v. Jones*, 18 Ohio St.3d 116, 480 N.E.2d 408 (1985), the Ohio Supreme Court held that multiple convictions for aggravated-vehicular homicide, in violation of R.C. 2903.06, can arise from a single instance of a person's reckless operation of his vehicle. The Supreme Court first examined the text of the vehicular-homicide statute that prohibited recklessly causing the death 'of another.' Id. at 118.  Holding that the statute, by being framed

in terms of an offender's conduct towards another, authorized a conviction for each person killed by a reckless driver, the Supreme Court concluded that the killing of the two passengers in the defendant's vehicle as a result of the defendant's reckless operation of the vehicle constituted two offenses of dissimilar import. The conduct of recklessly causing the death of two persons with the defendant's automobile represented 'two offenses of dissimilar import-the "import" under R.C. 2903.06 being each person killed.' Id." *State v. Watkins*, 1ˢᵗ Dist. No. C-120567, 2013-Ohio-4222, ¶ 12.

**{¶24}** Although *Watkins* involved offenses quite different from the ones sub judice, it relied on cases more similar to the one presently before this Court. For instance, the *Watkins* court cited *State v. Ellison*, supra, in support of its reasoning, which involved the offenses of kidnapping and abduction, with separate victims. *Watkins* also cited *State v. Wright*, supra, which involved the offenses of murder and felonious assault, involving a woman and her unborn child. Finally, we again look to the reasoning of *State v. Ragland*, which was discussed supra. Relying on the reasoning set forth in *State v. Jones*, supra, which involved aggravated vehicular homicide, the *Ragland* court determined that the offenses of felony murder

and aggravated robbery committed against two separate victims were not allied offenses of similar import. *State v. Ragland* at ¶ 71.

{¶25} Because Osman's felony murder and aggravated robbery convictions involved different victims, the imposition of multiple punishments does not offend double jeopardy principles or R.C. 2941.25. The offenses are of dissimilar import because each offense involved a different victim. Consequently, the trial court did not err by failing to merge the convictions.

{¶26} Accordingly, we overrule Osman's sole assignment of error and affirm the decision of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Harsha, J.: Concur in Judgment and Opinion.


For the Court,


BY:    _____
       Matthew W. McFarland, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**