[Cite as *State v. Osman*, 2011-Ohio-4626.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

State of Ohio,                                         :
                                                      :
      Plaintiff-Appellee,                       :          Case No: 09CA36
                                                      :
      v.                                        :
                                                      :          <u>DECISION AND</u>
Mahat Osman, aka Mahad Osman,                         :          <u>JUDGMENT ENTRY</u>
aka Mohamud Jama, aka Taz                             :
                                                      :
      Defendant-Appellant.                      :          File-stamped date:  9-12-11

---

<u>APPEARANCES:</u>

Sam B. Weiner, Columbus, Ohio, for Appellant.

C. David Warren, Athens County Prosecuting Attorney,  and Keller J. Blackburn, Athens County Assistant Prosecuting Attorney, Athens, Ohio, for Appellee.

---

Kline, J.:

**{¶1}**     Mahat Osman appeals his six felony convictions with firearm specifications. On appeal, Osman contends that aggravated robbery and felony murder are allied offenses of similar import.  We agree and remand this cause to the trial court for resentencing to consider whether Osman committed aggravated robbery and felony murder separately or with a separate animus.

**{¶2}**     Osman next contends that his convictions are supported by insufficient evidence and are against the manifest weight of the evidence.  Because we find that the death of a bystander is well within the scope of foreseeable outcomes for aggravated robbery, and because substantial evidence supports all his convictions, we disagree.

**{¶3}**     Osman next contends that the trial court erred when it failed to suppress his confession.  Because Osman's initial statements did not taint the statements he made after he received his *Miranda* warnings, we disagree.

**{¶4}**     Osman next contends that the trial court erred when it allowed the State to call two of Osman's co-conspirators to the stand in order for them to assert their privilege against self-incrimination.  Because the State is permitted to call a witness who will invoke his or her Fifth Amendment right against self-incrimination, so long as the State does not persist in repeated questioning, we disagree.

**{¶5}**     Osman next contends that the trial court erred and violated his rights under the Confrontation Clause by admitting a statement against interest by one of his co-conspirators.  We agree that the trial court erred, but we find any error by the trial court harmless beyond a reasonable doubt.

**{¶6}**     Finally, Osman contends that the trial court erred by admitting evidence of other bad acts.  Because the evidence was admissible to identify one of Osman's co-conspirators as a participant in the armed robbery and to demonstrate preparation for the armed robbery, we disagree.

**{¶7}**     Accordingly, we affirm, in part, and reverse, in part, the judgment of the trial court.  We remand this cause to the trial court for further proceedings consistent with this opinion.

I.

**{¶8}**     The exchange of gunfire during an aggravated robbery between three men outside a trailer and three other men inside a trailer resulted in the death of bystander

Donnie Putnam (hereinafter "victim") on February 14, 2009. The victim's death occurred outside Billie Osbourne, Jr.'s trailer.

## A.  The State's Case-In-Chief

**{¶9}**      Three men - Osman, Philip Boler, and Abdifatah Abdi - and one woman - Hamda Jama - went in two cars to Osbourne's trailer intent on committing a robbery.  A fifth individual - Eric Fussner - went with them because someone ordered him at gunpoint to drive his car.  Fussner drove Osman and Abdi while Boler drove Jama to the trailer.

**{¶10}**      When the group arrived at the trailer, Osman and Abdi ordered Fussner to back out of the driveway so that they could confer with Boler and establish a plan of action.  Before Fussner pulled into the driveway a second time, Osman and Abdi had him turn off his lights.

**{¶11}**      Osman, Abdi, and Boler exited the vehicles.  Boler carried a .22 Marlin, and Fussner overheard Boler say to Osman that he (i.e., Boler) would have "his" head in his sights the whole time.  (The record is not clear whose head Boler was referring to.)  Osman and Abdi then walked up to Osbourne's trailer.

**{¶12}**      Inside Osbourne's trailer that evening, Shane Benson and his friend John Perry Jr. were in the dining room smoking crack cocaine.  Someone (the record is not precisely clear on who) had noticed the two cars approaching the trailer.

**{¶13}**      Because of information he had received previously, Osbourne was concerned that the individuals in the cars wanted to rob him.  Earlier that day, Osbourne had retrieved several guns and had placed them in readily accessible locations in the trailer.  He placed a 9mm semi-automatic pistol on top of the television.  He placed an SKS

semi-automatic rifle next to the front door. And finally, he leaned a shotgun up against a countertop.

**{¶14}** Osman and Abdi knocked on the front door. Osbourne partially opened it and asked what they wanted. Osman and Abdi demanded to speak with "Johnny." Osbourne said that Johnny was not there and that there were children in the trailer. Osbourne testified that Abdi then drew a .40 caliber semi-automatic Smith and Wesson pistol and pressed it against Osbourne's gut. Osbourne grabbed the pistol and pushed it aside. As the two men struggled over the pistol, Abdi fired the gun twice. Eventually, Osbourne manipulated the pistol so that it pointed towards Abdi's head. At this point, Abdi turned and ran letting go of the pistol.

**{¶15}** The front door of Osbourne's trailer opened to the outside. After Osbourne wrested the pistol away from Abdi, Osbourne stood slightly outside his trailer. Osman then slammed against the front door knocking Osbourne against the wall. Osbourne shoved the door back open and knocked Osman backwards. Osman then ran from the porch.

**{¶16}** At this point, a gunfight ensued. Inside or near the trailer, Osbourne fired the gun he wrested from Abdi until it ran out of bullets. Osbourne then retrieved his SKS semiautomatic rifle and fired several rounds until it jammed. Osbourne's two visitors inside the trailer joined the gunfight. That is, Perry fired four rounds from a 9mm pistol, and Benson fired at least one shell from a shotgun.

**{¶17}** Outside the trailer, Boler fired at least three rounds from the .22 Marlin rifle. And Fussner testified that both Osman and Abdi fired at the trailer as they retreated from the porch.

**{¶18}** During the struggle on the porch, the victim arrived on the scene with his girlfriend Misty Swartz. The victim and Osbourne were friends. The victim got out of his car and started to move towards the porch. A 9mm round struck the victim during the exchange of gunfire. The bullet punctured the middle and lower lobes of the victim's right lung. Mortally wounded, the victim fell to the ground and died shortly thereafter.

**{¶19}** During the gunfight, Fussner backed his car out of the driveway and drove off. As a result, Osman, Boler, Abdi, and Jama all piled into the remaining car. Due to the speed of the escape, however, the car crashed and overturned shortly after leaving Osbourne's trailer. Boler remained in the area of the wreck, but his co-conspirators fled on foot.

**{¶20}** Paramedics were called to the scene of the shooting. One of the dispatched squads instead encountered the overturned car. The paramedics found Boler who appeared dazed and confused after the accident. While one of the paramedics was treating Boler, officers from the Athens County Sheriff's Office arrived and arrested Boler. Officers of the Ohio State Highway Patrol eventually apprehended Boler's co-conspirators, including Osman.

B. Osman's Version

**{¶21}** Following his arrest, Osman made several statements to police. Initially, Osman gave a statement to Trooper Glendon Ward when Trooper Ward was transporting Osman from the scene of Osman's arrest to the Athens County Sherriff's Department. In this statement, Osman informed Trooper Ward that he and his co-conspirators were the victims of a car accident. Osman stated that another vehicle hit their car from behind. At that time, however, the police had not advised Osman of his

*Miranda* rights. Shortly after Trooper Ward brought Osman to the Sherriff's Department, Trooper Ward advised Osman of his *Miranda* rights. And Osman again claimed that he and his co-conspirators were the victims of a hit-and-run accident. Osman claimed that he was travelling to a friend's house when another vehicle caused the car to crash. Lt. Bryan Cooper of the Athens County Sherriff's Department interviewed Osman several hours later. Lt. Cooper re-advised Osman of his *Miranda* rights. During the interview, Osman admitted that he and his co-conspirators took weapons to Osbourne's trailer to commit a robbery. Osman also admitted that he drew his firearm during the struggle with Osbourne on the porch. (Osman initially stated to Lt. Cooper that Abdi first pulled the gun on Osbourne. Osman, however, changed his story during the interview and stated that he, and not Abdi, first pulled the gun on Osbourne).

### C. Jury Verdicts

**{¶22}** The jury returned a verdict finding Osman (1) guilty of aggravated robbery and complicity to aggravated robbery, both with a firearm specification, in violation of R.C. 2911.01(A)(1) & 2941.145; (2) aggravated robbery and complicity to aggravated robbery, both with a firearm specification, in violation of R.C. 2911.01(A)(3) & 2941.145; and (3) murder and complicity to murder, both with a firearm specification, in violation of R.C. 2903.02(B) & 2941.145.

### D. Sentencing

**{¶23}** The trial court merged the counts of aggravated robbery and complicity to aggravated robbery, and the court sentenced Osman to ten years incarceration for those counts. The trial court also merged the murder and complicity to murder convictions, and the court imposed a mandatory fifteen years to life incarceration for the

murder conviction plus three years for the firearm specification.  The trial court ordered all sentences to be served consecutively, imposing a total sentence of twenty-eight years to life.

E. Issues on Appeal

**{¶24}**     Osman appeals and assigns the following errors for our review: I. "THE TRIAL COURT ERRED WHEN IT CONVICTED AND SENTENCED THE DEFENDANT ON BOTH THE CHARGE OF MURDER IN VIOLATION OF R.C. 2903.02(B), WHICH PROSCRIBED CAUSING THE DEATH OF ANOTHER AS A PROXIMATE RESULT OF AGGRAVATED ROBBERY, AND THE CHARGE OF AGGRAVATED ROBBERY, IN VIOLATION OF R.C. 2911.01, SINCE THE OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT UNDER R.C. 2941.25, WHICH PRECLUDES MULTIPLE CONVICTIONS AND SENTENCING FOR THE SAME CONDUCT AND BECAUSE THE CONSTITUTIONAL PROVISIONS OF THE DOUBLE JEOPARDY CLAUSE PROHIBIT THE INFLICTION OF CUMULATIVE PUNISHMENT FOR BOTH GREATER AND LESSER INCLUDED OFFENSES. (8/12/09, Day 8 Tr. 36-37; judgment entry)[.]"  II. "THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT ON THE CHARGE OF MURDER WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT CAUSED THE DEATH OF ANOTHER AS A PROXIMATE RESULT OF THE COMMISSION OF AN AGGRAVATED ROBBERY.  (Tr. 17-60; Passim)[.]"  III. "THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS CONFESSIONS OBTAINED WHEN THEY

HAD BEEN TAINTED BY A PREVIOUS INADMISSIBLE CONFESSION WHERE

MIRANDA WARNINGS HAD NOT BEEN GIVEN TO THE DEFENDANT.  (7/23/09

motion to suppress hearing, 16, 126)[.]"  IV. "THE TRIAL COURT ERRED WHEN IT

ALLOWED THE STATE TO CALL TWO CO-DEFENDANTS TO THE STAND FOR THE

PURPOSES OF HAVING THEM REFUSE TO TESTIFY PURSUANT TO THEIR FIFTH

AMENDMENT RIGHTS IN FRONT OF THE JURY IN ORDER TO ESTABLISH THAT

THEY WERE UNAVAILABLE SO THAT THEIR OUT-OF-COURT STATEMENTS

COULD BE USED.  (8/7/09, Day 5, Tr. 10-22)[.]"  V. "THE TRIAL COURT ERRED

WHEN IT ALLOWED THE STATE TO INTRODUCE THE OUT-OF-COURT

STATEMENT OF A CO-DEFENDANT, AS A STATEMENT AGAINST INTEREST, IN

VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHT TO CONFRONT

WITNESSES.  (8/10/09, Day 6, Tr. 175-176)."  And, VI. "THE DEFENDANT WAS

DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE

PROCESS OF LAW WHEN THE STATE INTRODUCED EVIDENCE OF OTHER BAD

ACTS, ALLEGEDLY COMMITTED BY THE DEFENDANT'S KNOWN ASSOCIATES, IN

ORDER TO PORTRAY THE DEFENDANT AS AN EVIL AND DANGEROUS

INDIVIDUAL.  (8/7/09, Day 5, Tr. 89-110)[.]"

II.

**{¶25}**     In his first assignment of error, Osman contends that the trial court erred by

failing to merge allied offenses of similar import.

**{¶26}**     Under Ohio law, "[w]here the same conduct by defendant can be construed to

constitute two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only

one." R.C. 2941.25(A). But "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

**{¶27}** This statute "codified the judicial doctrine of merger" and "prohibited the 'cumulative punishment of a defendant for the same criminal act where his conduct can be construed to constitute two statutory offenses, when, in substance and effect, only one offense has been committed.'" *State v. Ware* (1980), 63 Ohio St.2d 84, 86, quoting *State v. Roberts* (1980), 62 Ohio St.2d 170, 172-73.

**{¶28}** The Supreme Court of Ohio has recently overruled its prior judgments in this area of the law, and it articulated the proper analysis for determining whether merger is appropriate. See *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, at ¶44. "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. [*State v.*] *Blankenship*, 38 Ohio St.3d [116,] 119[,] (Whiteside, J., concurring) ('It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses.' [Emphasis sic]). * * *

**{¶29}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e.,

'a single act, committed with a single state of mind.' [*State v.*] *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569[,] at ¶ 50 (Lanzinger, J., dissenting).

**{¶30}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶31}** "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Johnson* at ¶48-51 (emphasis sic).

**{¶32}** An offender could, with the same conduct, commit aggravated robbery and felony murder. Therefore, aggravated robbery and felony murder are allied offenses of similar import.

**{¶33}** Here, at the sentencing hearing, Osman's counsel failed to raise any objection on this basis. And pursuant to Crim.R. 52(B), we review any error for plain error. The Supreme Court of Ohio has "previously held that the imposition of multiple sentences for allied offenses of similar import is plain error." *State v Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, at ¶31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, at ¶96-102.

**{¶34}** Even though felony murder and the predicate felony (here, aggravated robbery) are allied offenses of similar import under R.C. 2941.25(A), Osman may still be sentenced for both crimes. In order to sentence Osman for both crimes, the State must show that Osman committed the crimes "separately or with a separate animus." See R.C. 2941.25(B).

**{¶35}** Because aggravated robbery and felony murder are allied offenses of similar import, we remand the present case for resentencing. On remand, the trial court should consider whether Osman committed felony murder separately or with a separate animus from his aggravated robbery conviction and sentence Osman accordingly.

**{¶36}** Accordingly, we sustain Osman's first assignment of error.

III.

**{¶37}** In his second assignment of error, Osman contends that his convictions for aggravated robbery and murder are not supported by sufficient evidence and are against the manifest weight of the evidence. Because we utilize a different standard of review for each of these issues, we consider the sufficiency and manifest weight of the evidence arguments separately.

A.

**{¶38}** First, we consider whether sufficient evidence supports Osman's convictions for felony murder and aggravated robbery. When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

**{¶39}** This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Rather, this test "gives full play to the responsibility of the trier of fact * * * to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.

**{¶40}** Ohio's felony murder statute provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" R.C. 2903.02(B). The jury found Osman guilty of aggravated robbery and complicity to aggravated robbery in violation of R.C. 2911.01(A)(1) and R.C. 2911.01(A)(3), which are felonies of the first degree. R.C. 2911.01(C). (Ohio's aggravated robbery statute provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * (3) Inflict, or attempt to inflict, serious physical harm on another." R.C. 2911.01(A)(1) and (3).)

**{¶41}** Osman first contends that there is insufficient evidence of a robbery. Osman contends that the incident was "just a strong-armed attempt to collect a debt owed to Phillip Boler." Osman's Brief at 22. Osman further argues that Osbourne had advance warning of the incident, that there was no attempt at stealth as the alleged robbers

approached, and that Osbourne engaged in discussion with Abdi and Osman for two or three minutes before anything happened.

**{¶42}** We disagree and find sufficient evidence of aggravated robbery. Osman confessed to Lt. Cooper that he and his co-conspirators went to Osbourne's trailer to commit a robbery. When Osman and his co-conspirators arrived at Osbourne's trailer, instead of merely pulling in, Osman and Abdi ordered Fussner to back out so that they could confer with Boler and establish a plan of action. Finally, when Fussner pulled in the second time, Abdi and Osman had Fussner turn off his lights.

**{¶43}** Before Osman and Abdi approached Osbourne's trailer, Boler stated that he would have "his" head in the sights of his .22 Marlin rifle. Chelsea Deal, a witness for the State, testified that she was at a trailer where Osman and his co-conspirators were gathered prior to the robbery on the night of February 14, 2009. And Deal stated that she saw an individual in the trailer hand Osman a gun. Osbourne testified that when he refused entry to Abdi and Osman, Abdi shoved a pistol in Osbourne's gut. After Osbourne and Abdi struggled, Osman attempted to shove Osbourne back into the trailer. Osman confessed that during the struggle with Osbourne he pulled out a gun. (Osman also confessed that he first pulled the gun on Osbourne, not Abdi.) And Fussner testified that Abdi and Osman fired their guns as they retreated from the trailer.

**{¶44}** In light of this testimony, we find sufficient evidence in the record to support Osman's conviction for aggravated robbery.

**{¶45}** Osman next contends that "a series of intervening acts by third persons for which the third persons are criminally liable and which formed superseding causes

which broke the chain of causation between defendant's alleged unlawful acts and the death of another." Osman's brief at 22.

**{¶46}** Osman argues that the evidence demonstrates that, in all probability, Perry fired the bullet that killed the victim. According to Osman, this constitutes an intervening cause of death because, by the time Perry fired the 9mm pistol, Osman and Abdi were retreating and no longer a danger. Therefore, Osman contends that Perry did not have the right to fire a pistol in self defense, and his shooting, as a criminal act, is an intervening cause of the victim's death.

**{¶47}** Osman specifically points to the requirement that the State prove that the victim's death was proximately caused by Osman's actions. Under Ohio law, "it is irrelevant whether the killer is the defendant, an accomplice, or a third party." *State v. Ford*, Franklin App. No. 07AP-803, 2008-Ohio-4373, at ¶32, citing *State v. Franklin*, Mahoning App. No. 06-MA-79, 2008-Ohio-2264, at ¶111. "'[A d]efendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of [the d]efendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.'" *State v. Ervin*, Cuyahoga App. No. 87333, 2006-Ohio-4498, at ¶25, quoting *State v. Dixon*, Montgomery App. No. 18582, 2002-Ohio-541 (other citations omitted). See, also, *State v. Chambers* (1977), 53 Ohio App.2d 266, 268-69 (applying proximate cause standard to a similar involuntary manslaughter statute). "'It is not necessary that the accused [be] in a position to foresee the precise consequence of his

conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct.'" *State v. Lovelace* (1999), 137 Ohio App.3d 206, 219-20, quoting *State v. Losey* (1985), 23 Ohio App.3d 93, 96 (alteration sic).

**{¶48}** "Only a reasonably unforeseeable intervening cause will absolve one of criminal liability in this context." *State v. Dykas*, 185 Ohio App.3d 763, 2010-Ohio-359, at ¶25, citing *Lovelace* at 215. Even intervening criminal conduct does not prevent an offender's actions from being the proximate cause so long as that intervening conduct was foreseeable. See *Lovelace* at 218-19 (holding that police officer's criminal conduct during a high-speed chase, which directly caused a motorist's death, was foreseeable, and, therefore, defendant could be held criminally liable for proximately causing the motorist's death).

**{¶49}** Even if Perry fired the fatal shot without justification, the State still satisfied its burden. The State produced evidence that, if believed, indicated that Osman and his co-conspirators went to Osbourne's residence to commit a robbery. Attempting to rob someone at gunpoint might reasonably lead to gunfire, and the death or injury of the combatants or bystanders is foreseeable. The fact that Perry may not have been fully justified in firing his weapon does not make the victim's death fall outside the scope of the risk created by the aggravated robbery. Additionally, Fussner testified that Osman and Abdi fired at the trailer as they retreated. Thus, the jury could believe that Perry was justified in firing his weapon.

**{¶50}** The State produced ample evidence that Osman and his co-conspirators intended to engage in an armed robbery. It should have likewise been foreseeable that

someone could be shot and killed in such a robbery, including a bystander.  See *Dixon* ("Clearly, the shooting which killed [an accomplice] was within the scope of the risk created by [the defendant] when [they] robbed the Jiffy Lube at gunpoint."); *State v. Jennings*, Franklin App. Nos. 09AP-70 & 09AP-75, 2009-Ohio-6840, at ¶41-57 (finding sufficient evidence existed to support the conviction for felony murder where the principal offender in a robbery shot the victim in a house while the defendant was on the porch); *Ford* at ¶¶4-8, 32 (finding sufficient evidence of proximate cause where a co-offender is shot in the course of a robbery by an intended victim).

**{¶51}**     Accordingly, we find that there is sufficient evidence in the record to support Osman's convictions for aggravated robbery and murder.  That is, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crimes of aggravated robbery and felony murder proven beyond a reasonable doubt

B.

**{¶52}**     Osman next contends that his convictions are against the manifest weight of the evidence.  When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."  *State v. Eskridge* (1988), 38 Ohio St.3d 56, at paragraph two of the syllabus.  See, also, *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶41.  We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its

way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith*, 2007-Ohio-502, at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-71; *Martin* at 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175 (citations omitted).

**{¶53}** "Even in our role as thirteenth juror we are constrained by the rule that the weight to be given evidence and the credibility to be afforded testimony are normally issues to be determined by the trier of fact. * * * The fact finder is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * * Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice." *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555, at ¶13 (citations omitted).

**{¶54}** Here, Osman confessed that he and his co-conspirators went to Osbourne's trailer armed with guns to commit a robbery. Although Osbourne testified that Abdi pulled the gun on him, Osman told Lt. Cooper that he (i.e., Osman), not Abdi, pulled the gun. After the struggle with Osbourne, Osman attempted to shove Osbourne back into the trailer. And Fussner testified that both Osman and Abdi fired weapons at Osbourne as they fled. The jury did not clearly lose its way in concluding that the victim's death was a foreseeable result of aggravated robbery. Thus, we do not find that Osman's convictions represent a manifest miscarriage of justice. Substantial evidence supports Osman's convictions.

**{¶55}** Accordingly, we overrule Osman's second assignment of error.

IV.

**{¶56}**     In his third assignment of error, Osman contends that the trial court erred when it failed to suppress his statements to the police.  Osman contends that the statements he provided police prior to receiving his *Miranda* warnings tainted his later confession, which Osman made after he received his *Miranda* warnings.

**{¶57}**     "'[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact.'"  *State v. Featherstone*, 150 Ohio App.3d 24, 2002-Ohio-6028, at ¶10, quoting *State v. Vest*, Ross App. No. 00CA2576, 2001-Ohio-2394 (alteration sic).  "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact."  *State v. Mills* (1992), 62 Ohio St.3d 357, 366 (citation omitted).  Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594.  However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether these facts meet the applicable legal standard.  *State v. Klein* (1991), 73 Ohio App.3d 486, 488.

**{¶58}**     Waiver of the Fifth Amendment right not to incriminate oneself must be made "voluntarily, knowingly and intelligently."  *Miranda v. Arizona* (1966), 384 U.S. 436, 444.  Absent evidence that coercive police conduct overcame a defendant's will and critically impaired his capacity for self-determination, we presume that a defendant's decision to waive his Fifth Amendment privilege was voluntary.  *State v. Dailey* (1990), 53 Ohio St.3d 88, 91-92.  To determine whether a waiver was voluntary, the court must consider "the totality of the circumstances" and look specifically at the defendant's "age,

mentality, and prior criminal experience * * *; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, at paragraph two of the syllabus, overruled on other grounds by *Edwards v. Ohio* (1978), 438 U.S. 911. Evidence that the defendant signed a written waiver of his rights is strong proof that the waiver is valid. *State v. Dennis*, 79 Ohio St.3d 421, 425, 1997-Ohio-372.

**{¶59}** Osman contends that his statements given before the police gave him *Miranda* warnings tainted subsequent statements he made after he received his *Miranda* warnings. Osman gave three relevant statements to the police. The first was a "statement made to Trooper Ward in a car ride from the place where [Osman] was arrested to the Sheriff's Department. *Miranda* had not been given[.]" Transcript of Suppression Hearing at 16. During the ride to the Sheriff's Department, Osman stated to Trooper Ward that Osman and his co-conspirators were the victims of a car accident. Osman claimed that another vehicle collided with the car he was in and drove off. Osman's statement about the accident was in response to Trooper Ward's questions, and the State stipulated that this pre-*Miranda* statement to Trooper Ward was inadmissible.

**{¶60}** The police elicited a second statement from Osman after issuing the *Miranda* warnings. Osman signed the Ohio State Highway Patrol Constitutional Rights Waiver form before giving the statement, and the trial court admitted this second statement into evidence. In this statement, Osman claimed that he was traveling to a friend's house in New Marshfield when a pick-up truck, Jeep, or sport utility vehicle hit the car he was in and caused an accident.

**{¶61}** Finally, Osman gave a third statement to Lt. Cooper that was recorded and played for the jury. Lt. Cooper advised Osman of his *Miranda* rights again at the beginning of the interview. In this statement, Osman confessed to Lt. Cooper that he and his co-conspirators went to Osbourne's trailer armed with guns to commit a robbery. Osman also confessed that he (not Abdi) initially pulled the gun on Osbourne during the confrontation on the porch.

**{¶62}** Considering Osman's statements prior to receiving his *Miranda* warnings, we must determine whether the trial court should have suppressed Osman's subsequent statements after the police informed him of his *Miranda* rights. In *Oregon v. Elstad* (1985), 470 U.S. 298, the Court analyzed whether a defendant could waive his *Miranda* rights if the defendant had previously responded to uncoercive questions prior to receiving *Miranda* warnings. The police in *Elstad* went to the house of a suspect with an arrest warrant. Id. at 300. An officer talked with the suspect, and the officer stated, among other things, that the police were there because they felt that the suspect was involved in a burglary. Id. at 300-01. The suspect replied to this statement by saying: "Yes, I was there." Id. at 301. The police then took the suspect into custody, and the suspect effectively confessed to the crime after receiving *Miranda* warnings. Id. The suspect argued that the initial un-*Mirandized* interrogation tainted the subsequent confession and rendered the subsequent confession fruit of the poisonous tree. Id. at 302.

**{¶63}** The Court concluded that "[t]he relevant inquiry is whether, in fact, the second statement was also voluntarily made." *Elstad* at 318. And the Court stated "that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of

compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief.  No further purpose is served by imputing 'taint' to subsequent statements obtained pursuant to a voluntary and knowing waiver.  We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings."  Id.

**{¶64}**     The Court revisited this issue in *Missouri v. Seibert* (2004), 542 U.S. 600.  In *Seibert*, the police had established a deliberate strategy of withholding *Miranda* warnings until after they had elicited incriminating statements.  Id. at 609-11.  The police would then *Mirandize* the suspect and ask the suspect to repeat the incriminating statements so that the police could testify as to any subsequent statements in court.  Id.  In response to this intentional two-tier interrogation technique, the Court held that "[s]trategists dedicated to draining the substance out of *Miranda* cannot accomplish by training instructions what * * * Congress could not do by statute.  Because the question-first tactic effectively threatens to thwart *Miranda's* purpose of reducing the risk that a coerced confession would be admitted, and because the facts here do not reasonably support a conclusion that the warnings given could have served their purpose, Seibert's postwarning statements are inadmissible."  Id. at 617.  "The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires."  Id. at 611-12.

**{¶65}**     Here, *Seibert* is inapposite.  While Trooper Ward transported Osman to the Sheriff's Department, Osman merely stated that he and his co-conspirators were the

victims of a hit-and-run accident. In this initial statement to Trooper Ward, Osman did not tie himself to the robbery or the victim's death. Osman received his *Miranda* warnings shortly after arriving at the Sheriff's Department, and he made essentially the same claim regarding being the victim of an accident. Osman made his second post-warning statement, in which he confessed to committing aggravated robbery to Lt. Cooper, long after he had first received his *Miranda* warnings. (We note that Lt. Cooper re-advised Osman of his *Miranda* rights before conducting the interview.) And there is no evidence that the police employed a strategy to undermine Osman's *Miranda* rights. Thus, there is no reason to find that Osman's warnings do not function "effectively" as *Miranda* requires.

{¶66}      Accordingly, we find that the trial court correctly denied Osman's motion to suppress his statements, and we overrule Osman's third assignment of error.

V.

{¶67}      In his fourth assignment of error, Osman contends that the trial court erred when it allowed the State to call two of Osman's co-conspirators to the stand for the purpose of having the witnesses assert their privilege against self-incrimination.

{¶68}      "'[T]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶79, quoting *State v. Sage* (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. "The term 'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

{¶69}    The Supreme Court of Ohio has held that "[a] witness, even though he has previously indicated that he will refuse to testify on the ground that to do so would incriminate him, may be called as a witness." *State v. Dinsio* (1964), 176 Ohio St. 460, 466.  "The court [does] not commit prejudicial error in allowing the prosecutor for the state to call the witness and to pursue his inquiry sufficiently to determine whether the witness intended to claim the privilege of immunity.  Once it [is] established that the witness intend[s] to claim his privilege of immunity, the court commit[s] error prejudicial to the defendant in permitting the prosecutor to continue his line of questioning, which place[s] before the jury innuendo evidence or inferences of evidence which the state could not get before the jury by direct testimony from the witness*."* Id. at 468.

{¶70}    As we have previously held, "*Dinsio* is not violated when questioning is brief and the prosecutor stops asking questions once it becomes clear that the witness will not answer."  *State v. Bowers*, Hocking App. No. 06CA7, 2007-Ohio-3986, at ¶9.

{¶71}    Here, the State's questioning of witness Boler ceased after he invoked his right against self-incrimination.  Osman attempts to cast the State's request to hold witness Abdi in contempt as prejudicial.  However, Abdi stood silent on the stand and refused to even give his name.  Once it became clear that Abdi had no intention of speaking, the State ceased asking questions.  Therefore, the trial court did not violate *Dinsio*.

{¶72}    The State intended to introduce prior statements from Boler as statements against interest under Evid.R. 804(B)(3).  The State sought to admit Boler's statement to Osman that Boler would have "his" head in the scope of Boler's rifle, which Fussner testified to.  Additionally, the State sought to admit Boler's statement to Lt. Cooper that

Boler fired his rifle three times at Osbourne's trailer. (This statement is addressed in Assignment of Error Five.) The record also indicates that the State chose not to introduce statements against interest made by Abdi because the State was concerned that Abdi's statements would violate Osman's rights under the Confrontation Clause.

**{¶73}** In order to introduce a statement under Evid.R. 804(B)(3), the State needed to establish that the declarant was unavailable as a witness. "'Unavailability as a witness' includes any of the following situations in which the declarant: (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement[.]" Evid.R. 804(A)(1). "A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." *State v. Keairns* (1984), 9 Ohio St.3d 228, at paragraph three of the syllabus.

**{¶74}** Here the defense refused to stipulate to the unavailability of these witnesses. Therefore, the prosecution was obliged to establish the unavailability of the witnesses. And under *Keairns*, the only way the prosecution could do that is through the testimony of witnesses under oath.

**{¶75}** Osman also contends that the trial court erred by failing to take the testimony of Boler and Abdi outside the presence of the jury. Osman cites no authority for this particular argument. Furthermore, the court instructed the jury that "nothing is to be inferred in any way from the refusal of these two witnesses to respond to questions." Trial Transcript, Day 5, at 22. "'A presumption always exists that the jury has followed the instructions given to it by the trial court.'" *State v. Murphy*, Scioto App. No.

09CA3311, 2010-Ohio-5031, at ¶81, quoting *Pang v. Minch* (1990), 53 Ohio St.3d 186,

at paragraph four of the syllabus.  And on these facts, we cannot say that the trial court

abused its discretion.

**{¶76}** Accordingly, we overrule Osman's fourth assignment of error.

VI.

**{¶77}** In his fifth assignment of error, Osman contends that the admission of a

statement against interest, made by Boler, violated Osman's right to confront witnesses

under the Sixth Amendment to the United States Constitution.  The trial court admitted a

statement that Boler made to Lt. Cooper.  In this statement, Boler admitted that he had

fired three shots from a .22 caliber rifle at Osbourne's trailer.

**{¶78}** We use a de novo standard to review alleged violations of a criminal

defendant's rights under the Confrontation Clause of the Sixth Amendment.  *State v.

Rinehart*, Ross App. No. 07CA2983, 2008-Ohio-5770, at ¶20; see, also, *State v. Smith*,

162 Ohio App.3d 208, 2005-Ohio-3579, at ¶8, citing *United States v. Robinson* (C.A.6,

2004), 389 F.3d 582, 592.

**{¶79}** "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal

prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses

against him.'  [And] this bedrock procedural guarantee applies to both federal and state

prosecutions."  *Crawford v. Washington* (2004), 541 U.S. 36, 42, quoting *Pointer v.

Texas* (1965), 380 U.S. 400, 406.

**{¶80}** In *Crawford*, the Court held that "[w]here testimonial evidence is at issue * * *

the Sixth Amendment demands what the common law required: unavailability and a

prior opportunity for cross-examination."  Id. at 68.  While the Court did not

comprehensively define "testimonial," it held that statements elicited through police interrogation constitute testimonial evidence.  Id.

**{¶81}**     In *Davis v. Washington* (2006), 547 U.S. 813, the Court refined the definition of "testimonial."  The statements at issue in *Davis* were statements made to police by alleged victims of domestic violence.  The Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  Id. at 822.

**{¶82}**     Here, Boler's statements were made during a police interrogation after Boler was in custody.  Lt. Cooper elicited the statements from Boler while Boler was in jail.  The police sought to establish past events potentially relevant to a later criminal prosecution.  And there was no ongoing emergency.  Thus, these statements were testimonial.

**{¶83}**     On appeal, the State argues that the statement was admissible under *State v. Reid*, Montgomery App. No. 19352, 2003-Ohio-4087.  The State relies on *Reid* to suggest that admission of Boler's statement did not prejudice Osman because the statement did not directly implicate Osman.

**{¶84}**     We, however, find *Reid* and the United States Supreme Court case on which it relies, *Bruton v. United States* (1968), 391 U.S. 123, inapposite*.  Reid* does not address the Confrontation Clause violations Osman complains of on appeal.  In *Reid*,

the defendants (Reid and a co-defendant) were on trial for aggravated murder and aggravated robbery, and Reid argued that he should have received a separate trial. Id. at ¶8. At trial, a police officer testified that Reid's co-defendant stated: "I didn't mean to kill that man. It was just supposed to be a robbery." Id. at ¶10. Reid alleged admission of this statement constituted a *Bruton* violation. Id at ¶8.

**{¶85}** In *Bruton*, the government tried two co-defendants in a joint trial, and one of the defendants had given a confession that implicated his co-defendant in the crime. The trial court admitted the statement against the confessor (who did not testify at trial), and the court instructed the jury not to consider the confession as it related to the non-confessing co-defendant. *Bruton* at 124-25. The *Bruton* Court held that, in the context of a joint trial, the instruction was not an adequate substitute for the non-confessing co-defendant's right to cross-examination. Id. at 137. The *Reid* court distinguished *Bruton* on the basis that the confession in *Reid* did not implicate the co-defendant. *Reid* at ¶10. *Reid*, however, does not address the issue of a *Crawford* violation. That is, *Reid* does not analyze the admission of *testimonial hearsay* from a declarant who was not available for cross-examination. Thus, the authority the State relies upon is not persuasive.

**{¶86}** Admission of testimonial hearsay from a declarant who is not available for cross-examination, by virtue of exercising his or her right against self-incrimination, violates the defendant's rights under the Confrontation Clause. See *State v. Goff*, Summit App. No. 21320, 2005-Ohio-339, at ¶11; *State v. Carter*, Cuyahoga App. No. 84036, 2004-Ohio-6861, at ¶37; *State v. Cutlip*, Medina App. No. 03CA0118-M, 2004-Ohio-2120, at ¶16. In these cases, it is unclear whether the declarant actually took the

stand to assert his or her Fifth Amendment privilege. However, the mere fact that the trial court allowed the prosecution to call Boler to the stand for Boler to assert his Fifth Amendment privilege cannot serve to safeguard Osman's right to confrontation.

**{¶87}** Boler was not available for cross-examination when he took the stand to assert his Fifth Amendment right against self-incrimination. See Evid.R. 804(A)(1) ("'Unavailability as a witness' includes any of the following situations in which the declarant (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement[.]"). Thus, admission of Boler's testimonial statement made to Lt. Cooper violated Osman's rights under the Confrontation Clause.

**{¶88}** The State next argues that any improperly admitted statement should be considered harmless error. A constitutional error is not prejudicial if the error is "harmless beyond a reasonable doubt." *State v. Love*, Ross App. No. 05CA2838, 2006-Ohio-1824, at ¶34, quoting *Chapman v. California* (1967), 386 U.S. 18, 24. "[E]rror is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, at paragraph six of the syllabus; *State v. Woods*, Ross App. No. 09CA3090, 2009-Ohio-6169, at ¶27; see, also, *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, at ¶78.

**{¶89}** Here, we find any error harmless beyond a reasonable doubt. Absent Boler's statements, the remaining evidence of Osman's guilt is overwhelming. Osman himself confessed to Lt. Cooper that Osman and his co-conspirators went to Osbourne's trailer with guns to commit a robbery. Abdi and Osman confronted Osbourne on Osbourne's

porch, and a gunfight ensued, which led to the victim's death. The record firmly establishes that Osman and his co-conspirators intended an aggravated robbery and that the victim's death was proximately caused by the same.

**{¶90}** Boler's statement that he fired three rounds from his .22 Marlin has little to add to either one of these conclusions. The statement was not necessary for the State to prove the aggravated robbery. Osman confessed that he and his co-conspirators went to Osbourne's trailer intent on committing a robbery. Osbourne testified that Abdi drew a gun on Osbourne when Abdi and Osman confronted Osbourne at the trailer. And Osman confessed that he pulled out his gun during the struggle with Osbourne. Additionally, Fussner testified that both Osman and Abdi fired at Osbourne's trailer as they fled.

**{¶91}** The statement from Boler did not help the State prove the murder. Osman was convicted of proximately causing the death of another as a result of an offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree. R.C. 2903.02(B). At worst, Boler's statement eliminated Boler as the actual shooter because the victim was shot with a 9mm pistol, not a .22 Marlin rifle. Thus, the statement made it more likely that Osman fired the fatal shot. This, however, did not prejudice Osman's murder conviction because the identity of the individual who fired the fatal shot has no bearing on Osman's guilt. "[I]t is irrelevant whether the killer is the defendant, an accomplice, or a third party." *Ford* at ¶32, citing *Franklin* at ¶111. The State could convict Osman of murder regardless of whether Osman actually fired the fatal round.

**{¶92}** Therefore, even without the admission of statements against interest from Boler, which indicated that Boler had fired three shots from a .22 Marlin, the evidence of Osman's guilt was overwhelming. Thus, we find that the violation of Osman's rights under the Confrontation Clause was harmless beyond a reasonable doubt.

**{¶93}** Accordingly, we overrule Osman's fifth assignment of error.

VII.

**{¶94}** In his final assignment of error, Osman contends that the trial court erred by admitting evidence of other bad acts. Specifically, Osman contends that the trial court erred by admitting evidence that indicated that Boler purchased the .22 Marlin rifle from the man who stole it. Osman points to the testimony of Charles Calendine and Michael White. Calendine identified the .22 Marlin rifle Boler possessed as a weapon that had belonged to him. Calendine also testified that the gun had been stolen from his house. White testified that he had broken into Calendine's house and that he stole a large number of firearms, including the .22 Marlin. White also testified that he sold the .22 Marlin to Boler.

**{¶95}** Again, we review a trial court's decisions regarding the admission of evidence under an abuse of discretion standard of review. *Ahmed* at ¶79. Osman argues that the admission of this evidence violated the rule against the admission of other bad acts. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). For proper admissibility, the trial court must determine that: (1) the other act is relevant to the crime

in question, and (2) evidence of the other act is relevant to an issue placed in question at trial. *State v. McCornell* (1993), 91 Ohio App.3d 141, 146, citing *State v. Howard* (1978), 57 Ohio App.2d 1, 6; *State v. Strong* (1963), 119 Ohio App. 31.

**{¶96}** If a trial court inappropriately admits evidence in violation of Evid.R. 404(B), we apply a non-constitutional harmless-error analysis. *Murphy* at ¶80. "A non-constitutional error is harmless when there is substantial other evidence to support the guilty verdict." Id.

**{¶97}** Osman argues that the evidence of the origin of the .22 Marlin and tying that .22 Marlin to Boler was irrelevant to the present case. Osman also argues that any probative value of this evidence was outweighed by the prejudicial effect of demonstrating that some of Osman's associates had engaged in criminal behavior.

**{¶98}** We disagree. The evidence tied Boler to the .22 Marlin, which complemented the evidence of shell casings found at the scene, Fussner's testimony, and the fact the .22 Marlin was found in the overturned car. The evidence tying Boler to the .22 Marlin was admissible to identify Boler, who accompanied Osman to Osbourne's trailer, as a participant in the armed robbery. The evidence was also admissible to show preparation for and intent to commit a robbery. And the probative value of this evidence was not substantially outweighed by the prejudicial effect of showing that Boler purchased the weapon from someone who had stolen it. See Evid.R. 403(A).

**{¶99}** Osman next argues that even if the evidence was relevant, the purpose could have been served by having White testify that he sold the rifle to Boler without the criminal history. Even assuming that Osman is correct, admission of the evidence that Boler purchased the .22 Marlin from the man who stole it was harmless error. There

was substantial other evidence supporting Osman's convictions. As detailed above, there was abundant evidence that Osman and his co-conspirators went to Osbourne's trailer with firearms to commit a robbery. This evidence included Osman's confession as well as the testimony of Osbourne and Fussner regarding Osman's role in the robbery. There was substantial evidence that Osman participated in an armed robbery, which led to a gunfight and, in turn, the victim's death. Thus, any error by the trial court in admitting the testimony that White stole the .22 Marlin before he sold it to Boler was harmless.

{¶100}    Accordingly, we overrule Osman's sixth assignment of error.

VIII.

{¶101}    In conclusion, we sustain Osman's first assignment of error and overrule all the others. Thus, we affirm, in part, and reverse, in part, the judgment of the trial court. We remand this cause to the trial court for further proceedings consistent with this opinion.

**JUDGMENT AFFIRMED, IN PART, REVERSED, IN PART, AND CAUSE REMANDED.**

Harsha, P.J., concurring:

**{¶102}**   I concur in judgment and opinion and note my agreement with the principal opinion's conclusion under the fifth assignment of error that, "The statement from Boler did not help the State prove the murder."  See ¶91, above.  In other words, there is no reasonable possibility the erroneous admission of Boler's statement against interest contributed to Osman's conviction.  See, *State v. Madrigal*, 87 Ohio St.3d 378, 388, 2000-Ohio-448, citing *Chapman v. California* (1967), 386 U.S. 18, 23, 87 S.Ct. 824, 827.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED, IN PART, REVERSED, IN PART, AND THIS CAUSE BE REMANDED to the trial court for further proceedings consistent with this opinion.  Appellant and Appellee shall pay equally the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.


Harsha, P.J.  Concurs in Judgment and Opinion with Concurring Opinion.
McFarland, J.:  Concurs in Judgment Only.


For the Court


BY:  _____
         Roger L.  Kline, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**